STATE OF CONNECTICUT *v.* DOUGLAS DAVIS
(AC 23864)

Flynn, West and McDonald, Js.

Argued April 28—officially released August 17, 2004

*Michael L. Moscowitz*, with whom, on the brief, was *Patricia King*, for the appellant (defendant).

*Sarah Hanna*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *John P. Doyle, Jr.*, assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Douglas Davis, appeals from the judgment of the trial court, revoking his proba-

tion and imposing a jail sentence, pursuant to General Statutes § 53a-32. On appeal, the defendant claims that (1) there was insufficient evidence for the court to find, by a fair preponderance of the evidence, that he was in possession of narcotics and (2) the court improperly admitted into evidence hearsay testimony regarding assertive conduct by the defendant's girlfriend indicating his possession of the narcotics. We affirm the judgment of the trial court.

To meet the requirement of reliable evidence for a violation of probation, our Supreme Court has held that the state must establish the violation by a fair preponderance of the evidence. *State* v. *Davis*, 229 Conn. 285, 295, 641 A.2d 370 (1994). The state presented the following evidence at the probation revocation hearing. The statewide narcotics task force (task force), acting on information that drug sales were occurring at a specific location on Sheffield Avenue, conducted surveillance for approximately ten to fifteen days at an apartment the defendant occupied with his girlfriend, Vanessa Mills, and her children. During this time, the officers from the task force observed the defendant entering and leaving the apartment on several occasions. The officers arranged for a confidential informant to make two controlled purchases of narcotics at the defendant's apartment from an African-American man named Doug. On each occasion, the informant was searched by the police prior to entering the apartment. The searches revealed that he was not in possession of either currency or narcotics. The informant was then given currency and kept under surveillance from the time that he was searched by the police until he entered the apartment building and then again after he left. He was then searched after each controlled purchase and found to be in possession of narcotics but not in possession of the currency.

On the basis of the surveillance and the controlled buys, Michael J. Wuchek, a New Haven police officer assigned to the task force, obtained a search warrant and, on the same day as the second controlled buy, executed a search of the defendant's apartment. Wuchek spoke with Mills during the course of the search and requested that she show him where the narcotics were located in the apartment. During the probation hearing, the prosecutor asked Wuchek how he was able to locate the packets of heroin. He answered that "[w]hile speaking to Ms. Mills, she told us about places that [the defendant] would hide them." The defendant objected to Wuchek's answer on hearsay grounds, and the objection was sustained. Later testimony from Wuchek established that Mills showed him a location above one of the doors in the apartment as one of the locations where the defendant kept his narcotics. This led to Wuchek's discovery and seizure of contraband that a field test confirmed was heroin.

While the search was being executed, the defendant was seen as a passenger in a car that approached the apartment but drove away when an officer beckoned to it. When he was arrested in the apartment a few days later, the defendant was asked why he fled. Wuchek testified that the defendant had responded: "[Y]ou're going to have to work to catch me . . . ."

On the basis of the defendant's arrest warrant for possessing narcotics and possessing narcotics with the intent to sell, his probation officer obtained a warrant for the defendant's arrest for violation of probation. After the hearing, the court revoked his probation upon finding a violation and sentenced the defendant to two years of incarceration. The defendant now appeals on the ground that the evidence was insufficient to find that he had violated a condition of probation and also claims relief on an unpreserved ground that assertive

hearsay conduct was improperly admitted into evidence.

I

We first address the defendant's claim that the court's finding of a violation of his probation was not sufficiently supported by a fair preponderance of the evidence. One of the general conditions of the defendant's probation was that he not violate any criminal law of the United States, this state or any other state or territory. The probation violation was premised on his arrest for possession of narcotics with intent to sell in violation of General Statutes § 21a-277 (a) and possession of narcotics in violation of General Statutes § 21a-279 (a). The defendant argues that there was insufficient evidence to find that he possessed the seized contraband. We disagree.

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004). The court's factual finding that a condition of probation was violated is the only determination from which the defendant appeals.

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding

of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id.

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where, as here, the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." (Citation omitted; internal quotation marks omitted.) *State* v. *Leon-Zazueta*, 80 Conn. App. 678, 683, 836 A.2d 1273 (2003), cert. denied, 268 Conn. 901, 845 A.2d 405 (2004). "While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of

[the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." *State* v. *Padua*, 73 Conn. App. 386, 419, 808 A.2d 361 (2002), cert. denied, 262 Conn. 940, 815 A.2d 671, cert. granted on other grounds, 262 Conn. 941, 815 A.2d 672 (2003).

The defendant takes issue with whether the state proved by a preponderance of the evidence that he was in possession of the seized narcotics found in his apartment. The court had to find the following three requirements satisfied before it could find a violation of probation based on possession of narcotics: (1) that the substance was in fact a narcotic, (2) that the defendant had knowledge of both the character of the substance and its presence and (3) that the defendant exercised dominion and control over the narcotics. We conclude that there was sufficient evidence for the court to make each of these determinations and, therefore, its finding that the defendant violated a condition of his probation was not clearly erroneous.

The seized substance tested positive for heroin on the basis of a field test performed by Wuchek, who had been specially trained in such testing and previously had found this method of testing reliable when compared to subsequent state laboratory tests. On appeal, the defendant does not challenge the narcotic character of the substance.

Rather, he claims that there was insufficient evidence that he had knowledge of the character of the substance and that he exercised dominion and control over the narcotics. We disagree. There is evidence to support this conclusion, and our review standard requires that we give every reasonable presumption in favor of the court's ruling. See *State* v. *Faraday*, supra, 268 Conn. 185.

The record reveals the following additional facts. The police had obtained information that an African-American male named "Doug" was selling narcotics from an apartment located at Sheffield Avenue in a multifamily residence. The defendant is named Douglas and was the only African-American male residing in the apartment. Two controlled purchases were made inside the defendant's apartment by a confidential informant. The police searched the informant prior to each controlled buy and found that he had no narcotics or money. The confidential informant then used money supplied by the police and went into the premises occupied by the defendant, while under surveillance, and emerged with heroin that he had purchased inside the residence, which he turned over to the police. The second controlled buy occurred on the same day that the search warrant was sought and executed, thus establishing a close temporal connection between the defendant and the drugs seized. The controlled buy was made while the defendant's car was in the driveway. The defendant also was observed entering and leaving the apartment during the time the apartment was under police surveillance. At the hearing, Wuchek testified that Mills showed him where the narcotics were hidden in the apartment during the execution of the search warrant. Wuchek seized a quantity of heroin from the defendant's apartment.

While the police were executing the search warrant and seizing the narcotics, the defendant arrived at the premises as a passenger in a car. That car drove away when a police officer beckoned the car to approach. When the defendant was arrested a few days later and asked why he had left, he told Wuchek: "[Y]ou are going to have to work to catch me . . . ." We recognize that the defendant's conduct and flight may be taken together with the facts of a case to justify an inference as to the defendant's guilt. See *State* v. *Jefferson*, 67

Conn. App. 249, 258, 786 A.2d 1189 (2001), cert. denied, 259 Conn. 918, 791 A.2d 566 (2002); *State* v. *Gilbert*, 52 Conn. App. 531, 542, 727 A.2d 747, cert. denied, 249 Conn. 905, 733 A.2d 224 (1999); *State* v. *Reddick*, 36 Conn. App. 774, 787, 654 A.2d 761, cert. denied, 232 Conn. 922, 656 A.2d 671 (1995). This evidence permitted the court to infer that the defendant knew of both the presence of the narcotics and its character and exercised dominion and control over the drugs in the apartment. The reasonable and logical inferences that can be drawn from this evidence supplied the required nexus between the defendant and the narcotics. This evidence laid a solid foundation on which the court could find that the defendant had dominion and control over the narcotics.

We conclude that there was sufficient reliable evidence to support the court's finding that a violation of probation had occurred.

II

In his final claim, the defendant maintains that the court improperly admitted into evidence hearsay testimony regarding assertive conduct by Mills concerning the defendant's possession of the narcotics. "The evidentiary standard for probation violation proceedings is broad. We [have previously held] that the court may also consider the types of information properly considered at an original sentencing hearing because a revocation hearing is merely a reconvention of the original sentencing hearing. . . . The court may, therefore, consider hearsay information, evidence of crimes for which the defendant was indicted but neither tried nor convicted, evidence of crimes for which the defendant was acquitted, and evidence of indictments or informations that were dismissed." (Citation omitted; internal quotation marks omitted.) *State* v. *Young*, 81 Conn. App.

710, 716, 841 A.2d 737, cert. denied, 269 Conn. 901, 852 A.2d 733 (2004).

While the defendant successfully objected to a question seeking to elicit from Wuchek a verbal statement made by Mills, he did not object to the state's asking the following line of questions to Wuchek:

"Q: Did Ms.—Officer [Wuchek], did you request that Ms. Mills show you where [the defendant] stashed narcotics within the apartment?

"A: Yes.

"Q: Did she show you such locations?

"A: Yes.

"Q: And in any of those locations did you find narcotics?

"A: Yes, sir.

"Q: What did you find?

"A: A bundle of heroin."

We must address this unpreserved claim of constitutional error according to the well established *Golding* standard of review.[1]

The hearsay assertion with which the defendant takes issue is Mills' pointing to the location of the drugs. "Nonverbal conduct may also be hearsay if intended as an assertion. If the conduct is assertive in nature, that is, meant to be a communication—like the nodding or shaking of the head in answer to a question—it is treated as a statement, and the hearsay rule applies. . . . However, conduct not intended as an assertion is not hearsay." (Citations omitted; internal quotation marks omitted.) *State* v. *King,* 249 Conn. 645, 670, 735 A.2d 267 (1999). The defendant claims that Wuchek's state-

---

[1] See *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

ment that Mills pointed to a location indicated that she was communicating to the officer that the narcotics were, in fact, the defendant's, thereby violating the defendant's right to confrontation. We cannot adduce from the record, after the fact, (1) if Mills, in fact, intended the conduct to be an assertion, (2) if she did intend it as an assertion, what she was asserting or (3) what was the state's purpose for offering the statement. Because of these problems, there is an inadequate record, and we will not review the defendant's claim on appeal. See *State* v. *Golding*, 213 Conn. 233, 240, 567 A.2d 823 (1989).

Finally, as previously pointed out, we conclude that, even if we do not consider Mills' pointing to the location of the narcotics as evidence that that was where the defendant, specifically, kept them, there was sufficient reliable evidence to find that the defendant possessed narcotics and thereby violated the terms of his probation.

The judgment is affirmed.

In this opinion the other judges concurred.