## STATE OF CONNECTICUT *v.* ELLIS T.*
### (AC 25631)

Dranginis, Bishop and Hennessy, Js.

Argued September 21—officially released November 8, 2005

*Thomas P. Mullaney III*, special public defender, for the appellant (defendant).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Michael E. Criscuolo*, special deputy assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Robin Cutuli*, assistant state's attorney, for the appellant (state).

*Opinion*

HENNESSY, J. The defendant, Ellis T., appeals from the judgment of the trial court finding him in violation of the conditions of his probation and committing him to the custody of the commissioner of correction for fifty-four months, with credit for twelve months already served. On appeal, the defendant claims that there was insufficient evidence to prove, by a preponderance of the evidence, that he violated his probation, in violation of General Statutes § 53a-32, by possessing narcotics in violation of General Statutes § 21a-279 (a). We disagree and affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On April 24, 2000, the defendant pleaded guilty to various charges and was adjudicated a youthful offender as defined by General Statutes § 54-76b. He was sentenced to five years imprisonment, suspended after one year, with three years probation. Subsequently, the defendant served time in prison and was then released on probation. While on probation, the defendant was arrested and charged with possession of narcotics in violation of § 21a-279 (a), and, as a result, a warrant for violation of probation was issued.

On May 10 and 11, 2004, a violation of probation hearing was held, in which the court ultimately found that the defendant violated the terms of his probation by possessing narcotics in violation of § 21a-279 (a). At the hearing, the state presented the following evidence that was credited by the court. The defendant's probation officer, Michael A. Couloute, testified, and documents were introduced establishing that when the

defendant began his probationary term, he had signed a conditions of probation form and that on August 25, 2000, Couloute personally reviewed those conditions with him. One of the conditions stated that the defendant could "not violate any criminal law of the United States, this state or any other state or territory."

Christopher Lyons, a retired sergeant in the Hartford police department, then testified as follows. On the night of July 9, 2001, while a commander in the gang task force assigned to the vice and narcotics unit, he and other plainclothes officers from the Hartford police department were patrolling Middlefield Street, an area known for drug trafficking, in an unmarked cruiser when he noticed the defendant holding a small plastic bag containing what he believed to be crack cocaine. The defendant, after recognizing the officers, walked across the street from where he had been standing and dropped the bag. Lyons then exited the patrol car and retrieved the bag.

Anthony Battistone, a retired detective in the Hartford police department, also testified and stated that he was a detective assigned to the gang task force unit, and was patrolling Middlefield Street with Lyons and the other officers. He saw the defendant walk across the street and start to open a plastic bag by rubbing his thumb and one of his fingers against the bottom of the bag. As the defendant was walking, Battistone observed "pebble" like objects falling from the bag. He immediately went to the area where the objects landed and collected them. After a field test, it was determined that the objects were pieces of crack cocaine.[1] The defendant was arrested as a result. On the basis of that evidence, the court found that the state had proved, by a preponderance of evidence, that the defendant

---

[1] Subsequent testing of the objects at the state toxicology laboratory confirmed that determination.

violated his probation by possessing narcotics in viola-
tion of § 21a-279 (a). This appeal followed.

On appeal, the defendant claims that the court's find-
ing of a violation of probation was not supported by a
fair preponderance of the evidence. Specifically, the
defendant argues that the state did not offer sufficient
evidence to prove he was in possession of the narcotics
found. We do not agree.

As a preliminary matter, we set forth the legal princi-
ples and the standard of review germane to our discus-
sion. "A revocation of probation hearing has two
distinct components and two purposes. A factual deter-
mination by a trial court as to whether a probationer has
violated a condition of probation must first be made."
(Internal quotation marks omitted.) *State* v. *Davis*, 84
Conn. App. 505, 509, 854 A.2d 67, cert. denied, 271 Conn.
922, 859 A.2d 581 (2004). "The state must establish a
violation of probation by a fair preponderance of the
evidence. . . . That is to say, the evidence must induce
a reasonable belief that it is more probable than not
that the defendant has violated a condition of his or
her probation." (Citation omitted; internal quotation
marks omitted.) *State* v. *Reilly*, 60 Conn. App. 716, 725,
760 A.2d 1001 (2000). "If a violation is found, a court
must next determine whether probation should be
revoked because the beneficial aspects of probation
are no longer being served. . . . Since there are two
distinct components of the revocation hearing, our stan-
dard of review differs depending on which part of the
hearing we are reviewing." (Internal quotation marks
omitted.) *State* v. *Davis*, supra, 509. The court's factual
finding that a condition of probation was violated is
the determination from which the defendant in this
case appeals.

"In making its factual determination, the trial court
is entitled to draw reasonable and logical inferences

from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id., 509–10.

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it." (Internal quotation marks omitted.) Id., 510. Because the defendant testified that the drugs collected at the scene did not belong to him[2] and because Battistone testified that he observed the narcotics fall from the defendant's person, our resolution of the defendant's claim involves an assessment of credibility.[3] "The credibility of witnesses is a matter to be resolved solely by the [trier of fact]." (Internal quotation marks omitted.) State v. White, 229 Conn. 125, 143, 640 A.2d 572 (1994). "[W]e must defer to the [trier's] assessment of the credibility of the wit-

[2] The defendant argues that Middlefield Street is a high crime area and, therefore, it is common to find narcotics lying on the ground. The defendant, however, did not offer any evidence to support his argument. Although the defendant did establish that Middlefield Street is a high crime area, there is nothing in the record that indicates the area is littered with narcotics, as the defendant suggests. In addition, his argument is not relevant because the court found that there had been actual possession of the cocaine and not constructive possession. See footnote 3.

[3] The defendant essentially claims that there was insufficient evidence to establish constructive possession of the narcotics collected at the scene. That argument is misplaced. The court found "actual physical possession." Battistone testified that he had observed the narcotics fall directly from the defendant's person. The issue, therefore, is one of credibility and does not warrant a constructive possession analysis. See State v. Clark, 56 Conn. App. 108, 112, 741 A.2d 331 (1999).

nesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) Id.

In this case, the court found that the state offered "the more credible evidence proving the case, including each of the elements of possession of narcotics, not just physical possession, but knowledge of the nature of the substance, [and therefore] the state has met its burden, not only . . . by a preponderance of the evidence, but [by] a higher standard of clear and convincing evidence." Given the evidence presented by the state, we conclude that this finding was not clearly erroneous. Two members of the Hartford police department testified on behalf of the state. Battistone testified that he had witnessed the narcotics collected at the scene fall directly from the plastic bag that the defendant was holding. Lyons testified that he had observed the defendant drop the bag. In addition, Battistone testified that he had observed the defendant open the plastic bag by rubbing his thumb and one of his fingers against the bottom of the bag. Battistone further testified that such a technique is common among individuals trying to destroy or to get rid of narcotics discretely. We therefore conclude that the court's finding that the state proved, by a preponderance of evidence, that the defendant violated the terms of his probation by possessing narcotics in violation of § 21a-279 (a) was not clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.