STATE OF CONNECTICUT *v.* JERRY DURANT
(AC 25140)

Flynn, Harper and McDonald, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued October 19, 2005—officially released March 14, 2006

*Deborah G. Stevenson*, special public defender, for the appellant (defendant).

*John A. East III*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Chris A. Pelosi*, assistant state's attorney, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Jerry Durant, appeals from the judgment revoking his probation and reinstating the six year unexecuted portion of his previous conviction from 1995. On appeal, the defendant claims

that the trial court improperly (1) found that he had violated the terms and conditions of his probation, although he was acquitted of the criminal charges underlying the revocation action, (2) exercised its discretion by reinstating his original sentence and ordering his incarceration, and (3) acted as the fact finder in the probation revocation proceeding after it had communicated with the jury following his acquittal. We affirm the judgment of the trial court.

The following procedural history and facts are relevant to our discussion of the issues on appeal. In 1995, the defendant was convicted of two counts of attempt to commit assault in the second degree in violation of General Statutes §§ 53a-49 and 53a-60, and one count of failure to appear in the first degree in violation of General Statutes § 53a-172. The court imposed a total effective sentence of seven years imprisonment, execution suspended after one year, followed by a five year period of probation.

On June 25, 2001, the defendant was arrested on a charge of assault and later was charged with one count of violation of probation in violation of General Statutes § 53a-32. On November 13, 2001, the defendant entered a pro forma denial of the violation of probation charge. On December 23, 2003, the defendant was charged in an amended information with two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and (3).

The evidentiary hearing before the court on the violation of probation charge was held concurrently with the jury trial on the assault charges. On January 9, 2004, after four days of testimony, the jury found the defendant not guilty as to the assault charges. At the trial, the defendant claimed that he acted in self-defense. Following the jury trial, the court held the probation revocation proceedings and heard additional

evidence relevant to the violation of probation charge. The parties had agreed previously that the court could consider evidence submitted during the course of the trial in its hearing on the violation of probation charge; therefore, the evidence presented during the trial was admitted into evidence in the probation revocation proceedings. The state presented the following evidence at the revocation hearing. On June 25, 2001, with four years and seven months of probation served, the defendant was involved in a violent landlord-tenant dispute. The defendant was then the landlord and resident of a multiunit house in Hartford in which the victim, Ruben Morales, was a tenant. The dispute began with an argument over removing an air conditioning unit in Morales' apartment, which was dripping water onto the cable television or telephone wire. Even after Morales removed the air conditioner, the defendant continued to argue and declared that he was going to evict Morales and Morales' girlfriend. Later, during the same day, as Morales and his girlfriend prepared to leave the property to take their two children to an amusement park, the defendant approached them while they were sitting in their car and informed them that the locks would be changed so that they would not be able to return to their apartment. Morales responded that he would call the police, and the verbal altercation quickly turned into a physical one. As a result, Morales sustained serious stab wounds in his arm and chest.

On January 15, 2004, the court found that the defendant had violated the terms and conditions of his probation. The court found that a violation of probation was proven by a preponderance of the evidence and credited the testimony of the victim under that standard of proof. It thereafter revoked the probation and reinstated the six year unexecuted portion of the defendant's previous sentence. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant first claims that the court improperly found that he violated the terms and conditions of his probation, although he was acquitted of the criminal charges underlying the violation of probation. The crux of the defendant's argument appears to be that § 53a-32[1] does not permit a finding of a probation violation based solely on the defendant's arrest because the defendant was acquitted of the charged crimes. The defendant further argues that a mere charge of violating the law is not sufficient for a finding of a violation of probation when, in this case, the specific condition of probation stated: "Do not violate any laws of the United States, this state, or any other state or territory." We find the defendant's arguments to be unavailing.

As a preliminary matter, we set forth the legal principles and the standard of review pertinent to our discussion. "A revocation of probation hearing has two

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge, or may issue a notice to appear to answer to a charge of such violation, which notice shall be personally served upon the defendant. Any such warrant shall authorize all officers named therein to return the defendant to the custody of the court or to any suitable detention facility designated by the court. . . .

"(b) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. Any such lesser sentence may include a term of imprisonment, all or a portion of which may be suspended entirely or after a period set by the court, followed by a period of probation with such conditions as the court may establish. No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . The state must establish a violation of probation by a fair preponderance of the evidence. . . . That is to say, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation." (Citation omitted; internal quotation marks omitted.) *State* v. *Ellis T.*, 92 Conn. App. 247, 250, 884 A.2d 437 (2005). "As a reviewing court, we may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling . . . ." (Internal quotation marks omitted.) *State* v. *Hedge*, 89 Conn. App. 348, 352, 873 A.2d 254, cert. denied, 274 Conn. 917, 879 A.2d 894 (2005).

The defendant was afforded a full hearing on his violation of probation charge as required under § 53a-32 (a). On appeal, he does not contest the fact that he was on probation at the time of his arrest on the underlying charges that gave rise to the probation revocation. He also does not contest that he had notice of the conditions of probation, which included that he not violate any criminal law of the United States, the state of Connecticut or any other state or territory. The specific condition the defendant was found to have violated prohibited him from violating any criminal law, but it did not require that he be convicted.

It is well settled that even when the defendant is acquitted of the underlying crime leading to the probation revocation proceeding, probation may still be revoked. "In a probation violation proceeding, all that is required is enough to satisfy the court within its sound judicial discretion that the probationer has not met the terms of his probation. . . . A finding of the commission of a criminal act is sufficient to support a revocation of probation." (Citation omitted; internal quotation marks omitted.) *State* v. *Hooks*, 80 Conn. App. 75, 82, 832 A.2d 690, cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003). In addition, "[a]ll that is required for revocation of probation is that the court be satisfied that the probationer has abused the opportunity given him to avoid incarceration. . . . Moreover, even though revocation is based upon felonious conduct, the constitution does not require that proof of such conduct be sufficient to sustain a criminal conviction." (Internal quotation marks omitted.) *Payne* v. *Robinson*, 10 Conn. App. 395, 402, 523 A.2d 917 (1987), aff'd, 207 Conn. 565, 541 A.2d 504, cert. denied, 488 U.S. 898, 109 S. Ct. 242, 102 L. Ed. 2d 230 (1988). Furthermore, "[w]e have consistently expressed the conviction that the outcome of a criminal proceeding simply has no relevance whatsoever to an independent determination on the same facts made in a revocation of probation hearing." *State* v. *Gauthier*, 73 Conn. App. 781, 794, 809 A.2d 1132 (2002), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003); see also *State* v. *Breckenridge*, 66 Conn. App. 490, 499–500, 784 A.2d 1034, cert. denied, 259 Conn. 904, 789 A.2d 991 (2001).

In *Gauthier*, we stated that "[i]n a criminal trial, the state must prove its case beyond a reasonable doubt. In a probation revocation hearing, by contrast, a violation of probation need only be shown by a preponderance of the evidence. The differing standards of proof relevant to those proceedings militate against applica-

tion of collateral estoppel. . . . [T]he most that can be said regarding the jury verdict is that the jury found that the alleged criminal conduct had not been proven beyond a reasonable doubt. The jury had no occasion to consider whether the charged conduct had been proven by a preponderance of the evidence, the standard of proof applicable to a probation revocation hearing. Thus . . . the factual issues had not been conclusively determined in a prior judicial proceeding for the purposes of the probation hearing." *State* v. *Gauthier*, supra, 73 Conn. App. 794. In *Breckenridge*, we similarly stated that "a trial court's finding of a violation of probation is not clearly erroneous in light of an acquittal at trial on the basis of the same circumstances. . . . [T]he purpose of a probation revocation hearing is to determine whether a defendant's conduct constituted an act sufficient to support a revocation of probation . . . rather than whether the defendant had, beyond a reasonable doubt, violated a criminal law. The proof of the conduct at the hearing need not be sufficient to sustain a violation of a criminal law." (Citation omitted; internal quotation marks omitted.) *State* v. *Breckenridge*, supra, 66 Conn. App. 499–500.

The defendant further argues that (1) the state did not establish a violation of probation by a preponderance of the evidence because his acquittal of the charges far outweighed any of the state's evidence that he committed the crime and (2) the court failed to consider properly the whole record in making its finding. We find those arguments to be without merit. The record shows that sufficient evidence was presented to support the court's finding. Moreover, although the defendant argues that there was conflicting testimony, some contrary to the court's finding, we have stated that "[e]vidence is not insufficient . . . because it is conflicting or inconsistent. [The fact finder] is free to juxtapose conflicting versions of events and determine which is

more credible. . . . It is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject." (Internal quotation marks omitted.) *State* v. *Gauthier*, supra, 73 Conn. App. 787. In addition, the court, in its capacity as the trier of fact for the purpose of the violation of probation hearing, was not bound by the factual findings of the jury in the criminal case. See id., 786. Finally, a review of the record reveals that the court carefully considered all testimony and other admitted evidence in making its finding.

We conclude, therefore, that the court's finding that the defendant intentionally inflicted serious physical injury on Morales was sufficient to support the revocation of probation and was not clearly erroneous.

## II

The defendant's second claim is that the court improperly exercised its discretion by reinstating the defendant's original sentence and ordering his incarceration. Specifically, he argues "that the court did not properly consider whether the beneficial aspects of probation [were] no longer being served." We do not agree.

We have explained that "[a] revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . If a violation [of probation] is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Citations omitted; internal quotation marks omitted.) *State* v. *Ellis T.*, supra, 92 Conn. App. 250. "On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . .

require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender and the protection of society. . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Hedge*, supra, 89 Conn. App. 351.

Following the determination that the defendant had indeed violated his probation, the court stated that it "must next determine whether the probation should be revoked because the beneficial aspects of probation are no longer being served. Of course, a very big factor to consider is what the defense brought out—that he had four months or four months and two weeks to go before it lapsed." The court then heard from counsel as to what evidence to consider in its determination. The court considered evidence of the defendant's probation record, the underlying crime for which he was serving probation, the nature of the incident that led to the revocation of probation hearing, and the defendant's educational and employment history while on probation. After duly considering the evidence put forth by counsel,[2] the court determined that the defendant had

---

[2] The court stated: "I did review in chambers the packet that was provided me by the defense attorney, where this gentleman went to a school, technical institute, received a diploma [and] demonstrates that he has had training in refrigeration and heating. He's a vendor. He's licensed. So, obviously— it's obvious to me that this gentleman's a hardworking gentleman. And it's obvious to me that he's taking these courses in order to better himself. This packet will be . . . a court's exhibit . . . . No sentencing is an easy task. . . . This is not an easy task, which makes it more difficult because apparently this gentleman's a law-abiding gentleman but for this incident. I genuinely, genuinely want to give [the defendant] consideration and credit for these reasons. Number one, which I've already mentioned, his being a hardworking businessman trying to better himself by education; that as [defense counsel] emphasized, and appropriately so, that he was . . . well into serv-

"a serious anger management problem" and that "the nature of the offense [was] so egregious [that], considering the prior egregious conduct for which he was put on probation . . . the court had no reasonable alternative but to impose the . . . maximum unexecuted portion of six years to serve." A review of the record shows that the court properly did consider whether the beneficial aspects of probation were being served and therefore did not abuse its discretion by revoking the defendant's probation and reinstating the unexecuted portion of the defendant's original sentence.

### III

The defendant's final claim is that the court improperly acted as the fact finder in the probation revocation proceeding after it had communicated with the jury following the defendant's acquittal at trial. Specifically, the defendant argues that the judge's ex parte communication with the jury might have affected the matter still pending before the court. The defendant further asserts that there is a presumption that the communication prejudiced him. We are not persuaded.

We begin by stating the applicable standard of review. "It is a well settled general rule that courts will not

ing the five year period of probation. He had four and one-half months shy of the term lapsing. And, as counsel emphasized, that apparently the defendant complied with—otherwise complied with probation but for this incident. And even . . . the fact that I consider the jury found him not guilty. . . . What's on the other side of the scale, the factors that I have to consider, are two. And really they appreciably, substantially and appreciably outweigh those positive factors in this gentleman's background. And these are very—two simple factors: The first is the serious nature of the matter for which he's on probation; two felonious assaults. I realize they were assault[s] in the second degree. But they're two felonious assaults wherein by prearrangement he was going to meet [certain individuals] and then . . . attempted to shoot them. That's outrageous. . . . The second factor is the nature of the wound inflicted on Mr. Morales. . . . The [c]ourt finds by a preponderance of the evidence that the defendant intentionally inflicted serious physical injury on Mr. Morales."

review a claim of judicial bias on appeal unless that claim was properly presented to the trial court via a motion for disqualification or a motion for mistrial. . . . We have repeatedly indicated our disfavor with the failure, whether because of a mistake of law, inattention or design, to object to errors occurring in the course of a trial until it is too late for them to be corrected, and thereafter, if the outcome of the trial proves unsatisfactory, with the assignment of such errors as grounds of appeal. . . . This court has also recognized, however, that a claim of judicial bias strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary. . . . No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. . . . We review this claim, therefore, only under a plain error standard of review." (Citations omitted; internal quotation marks omitted.) *Pickel* v. *Automated Waste Disposal, Inc.*, 65 Conn. App. 176, 180–81, 782 A.2d 231 (2001).

On January 9, 2004, after the jury found the defendant not guilty, the court invited the jurors in open court to stay behind and to ask any questions if they wanted to do so. None of the parties objected to the court's expressed intention to communicate with the jurors. On January 15, 2004, prior to conducting the probation revocation proceeding, the court informed the parties of that conversation, relating that the jurors had brought to the court's attention a photograph of the interior of the vehicle that had what appeared to be a freshly cut apple on the console. The court stated, "I think the inference that they wanted me to draw is apparently that there was a sharp instrument in that vehicle." The court continued: "Now, I indicated this to both attor-

neys . . . I have no reason to believe that that will influence this court. But I just wanted to hear from either side. You have your respective interests. This court certainly—anything that was imparted to me was—I would think not favorable to the state. . . . Now, I would represent to each of you that I am the trier of fact in this matter and that whatever was imparted to this court would not be considered by this court. Anything that was imparted to this court in that ex parte discussion would not be considered by this court, obviously."

When the court asked whether either side wanted to be heard on the issue, counsel for the state replied, "No, Your Honor." Counsel for the defendant responded, "Your Honor, I would indicate to the court that after our discussion in chambers, I reviewed the matter with my client. I told him what—exactly what you just explained. We discussed it. And he—we feel that the court heard all the evidence, and we don't want to start over with another judge. We would like to proceed." The court asked the defendant, "All right. Is that accurate, sir?" The defendant responded, "Yes, Your Honor."

The defendant first argues that "canon 3 (a) (4) of the Code of Judicial Conduct generally prohibits a presiding judge from initiating, permitting or considering ex parte communications concerning pending or impending proceedings outside of the presence of the parties." When we have, however, found a presumption of prejudice resulting from a judge's ex parte communication with the jury, it has been when the case was still under consideration by the jury. See *State* v. *McPhail*, 213 Conn. 161, 173, 567 A.2d 812 (1989). In this case, the jury had been discharged when the ex parte communication occurred. "Answering jurors' questions, to promote good public relations, and soliciting feedback regarding the performance of members of the bar are within the

court's administrative functions and are permissible under [canon 3 (a) (4) (A)] as long as the judge fully discloses his intention to speak with the jury and discloses the subject matter to be discussed." *Tessman* v. *Tiger Lee Construction Co.*, 228 Conn. 42, 57, 634 A.2d 870 (1993).

The defendant next asserts that "canon 3 (c) (1) of the Code of Judicial Conduct requires a judge to disqualify 'himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned.' " The defendant contends that because "the jurors' comment [may] have affected" the judge's ability to decide the issue of probation violation in an impartial manner, the judge should have disqualified himself.

"The standard for determining whether a judge should recuse himself or herself pursuant to canon 3 (c) is well established. The standard to be employed is an objective one, not the judge's subjective view as to whether he or she can be fair and impartial in hearing the case. . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification. Thus, an impropriety or the appearance of impropriety . . . that would reasonably lead one to question the judge's impartiality in a given proceeding clearly falls within the scope of the general standard. . . . The question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his [or her] . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) *Sabatasso* v. *Hogan*, 91 Conn. App. 808, 825, 882 A.2d 719, cert. denied, 276 Conn. 923, 888 A.2d 91 (2005).

General Statutes § 51-39 (c) provides: "When any judge or family support magistrate is disqualified to act

in any proceeding before him, he may act if the parties thereto consent in open court." See also *State* v. *D'Antonio*, 274 Conn. 658, 668, 877 A.2d 696 (2005). Although the defendant argues that the trial judge was required to disqualify himself sua sponte, the defendant has provided us with no authority that would require us to find such an action to be necessary when both parties have consented in open court to allow the judge to hear the case. In fact, we concluded in *State* v. *Ortiz*, 83 Conn. App. 142, 848 A.2d 1246, cert. denied, 270 Conn. 915, 853 A.2d 530 (2004), that "our precedent actually precludes us from so finding: A judge should not hesitate to disqualify himself sua sponte where his participation in a matter would violate [canon 3 (c)] of the Code of Judicial Conduct or General Statutes § 51-39 *unless* he obtains the parties' consent to his participation in open court pursuant to General Statutes § 51-39 (c)." (Emphasis in original; internal quotation marks omitted.) *State* v. *Ortiz*, supra, 155–56.

Finally, we agree with the state that even if there were any error, it was harmless. The court presided over a combined trial and revocation hearing that consumed six days, and the court heard all the witnesses testify and had ample information to arrive at its own conclusions. Moreover, the court stated that it had no reason to believe that its conversation with the jurors would influence the court, that although "anything that was imparted . . . was . . . not favorable to the state" and that it would not consider anything that was imparted to the court during the ex parte discussion. "[W]here a trial court states on the record that it will not consider certain evidence, [t]here is no reason to believe [it] could not do so, or that a reasonable person would have cause to question [its] ability to do so." (Internal quotation marks omitted.) *State* v. *Ortiz*, supra, 83 Conn. App. 156.

The judgment is affirmed.

In this opinion the other judges concurred.