STATE OF CONNECTICUT *v.* RORY COLEMAN
(AC 29158)

Beach, Robinson and West, Js.

Argued January 20—officially released June 2, 2009

---

*Annacarina Jacob*, senior assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Terri L. Sonnemann*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Rory Coleman, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), possession of narcotics in violation of General Statutes § 21a-279 (a) and possession of narcotics within 1500 feet of a school in violation of General Statutes § 21a-279 (d). On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction and (2) the court improperly instructed the jury. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On May 9, 2005, Robert Burgos and Brenon Plourde, members of the Hartford police department, and Peter Borysevicz, a special agent employed by the federal Drug Enforcement Administration, were members of a Hartford task force assigned to investigate narcotics trafficking crimes in Hartford and its surrounding towns. While conducting surveillance of a house at 24 Florence Street in Hartford, Plourde was parked in an undercover minivan in a parking lot a few streets from the house. A confidential informant previously had provided information to Burgos, Plourde and Borysevicz that crack cocaine was being cooked at the Florence Street location and was being distributed to drug dealers. The informant had told the police that a man later identified as Kendrick Leggett was selling drugs in the neighborhood. The informant had given a physical description of Leggett, who drove a gold Ford Explorer with tinted windows and Massachusetts rental plates.

At approximately 8 p.m., on May 9, 2005, a vehicle matching the description given by the informant arrived at 24 Florence Street. A passenger got out, and the vehicle departed. At approximately 8:30 p.m., the same vehicle entered a parking lot adjacent to the parking lot in which Plourde's minivan was parked. Plourde radioed to Burgos and Borysevicz. He notified them that the gold Explorer was in the parking lot in front of him. Plourde was unable to see into the Explorer.

A few moments later, an Oldsmobile entered the parking lot and stopped next to the Explorer. The driver of the Oldsmobile, later identified as the defendant, left his car and entered the Explorer. When the defendant entered the Explorer, the interior light went on, and Plourde was able to see the driver of the Explorer. The driver matched the physical description of Leggett that had been given by the informant. When the defendant

shut the passenger side door, the interior light turned off.

A few moments later, the interior light in the Explorer went on for a second time. Plourde observed the defendant appearing to examine something white in plastic that appeared to Plourde to be crack cocaine or powder cocaine. The defendant held the plastic with the white substance in his hand. Several minutes later, the interior light came on for a third time. Plourde saw the defendant and Leggett counting out money on the dashboard. Plourde notified Burgos and Borysevicz that the occupants of the Explorer were exchanging money. He told them to proceed to the location of the Explorer and to make contact with the individuals inside.

Burgos parked his car directly in front of the Explorer to block it in and to prevent escape. On leaving his vehicle, Burgos pulled out his firearm and instructed Leggett to keep his hands where he could see them. Burgos observed a lot of movement from the driver, and money was "flying all over the place." After opening the door of the Explorer, Burgos found money on the dashboard, on Leggett's lap and in his hands. The amount of cash found on and near Leggett totaled $7700.

Borysevicz parked his car directly in front of the Oldsmobile. Upon leaving the car, Borysevicz drew his weapon and told the occupants of the Explorer to put their hands up. The defendant complied by putting his hands up. Borysevicz observed money totaling $2046 in the defendant's lap and on the floor at his feet. He also found a plastic bag with a quantity of an off-white rock like substance on the floor of the passenger side of the vehicle.

A field test performed on the substance revealed that it was freebase cocaine, also known as crack cocaine. It weighed four and one-half ounces, or 126 grams. The crack cocaine was seized within 1500 feet of the Quirk

Middle School, a public school for students in the seventh and eighth grades.

After waiving his *Miranda* rights,[1] the defendant provided the police with a handwritten, signed statement. He claimed that he met with Leggett to purchase an ounce of crack cocaine. After he handed Leggett $550, Leggett produced a bag of crack cocaine. Immediately thereafter, the police approached the vehicle and told Leggett and the defendant to put their hands up.

The defendant was charged by way of a long form information with possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (b), possession of a controlled substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of narcotics in violation of § 21a-279 (a) and possession of narcotics within 1500 feet of a school in violation of § 21a-279 (d). After a jury trial, the defendant was convicted on all charges except possession of a controlled substance with intent to sell within 1500 feet of a school. The defendant was sentenced to a total effective term of twelve years incarceration, five years mandatory minimum, and three years special parole. At sentencing, the court merged the conviction on both possession of narcotics and possession of narcotics within 1500 feet of a school into the conviction of possession of narcotics with intent to sell. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The defendant first claims that the state failed to present sufficient evidence to support his conviction of possession of narcotics with intent to sell, possession

---

[1] See *Miranda* v. *Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

of narcotics and possession of narcotics within 1500 feet of a school. With respect to all three crimes, the defendant claims that the evidence introduced at trial was insufficient to prove that he had actual or constructive possession of the crack cocaine found by the police. We disagree.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Montgomery*, 254 Conn. 694, 732, 759 A.2d 995 (2000).

"[I]t does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . This does not require that each subordinate conclusion established by or inferred from the evidence, or even from other inferences, be proved beyond a reasonable doubt . . . because this court has held that a jury's factual inferences that support a guilty verdict need only be reasonable." (Citation omitted; internal quotation marks omitted.) *State* v. *DeCaro*, 252 Conn. 229, 239–40, 745 A.2d 800 (2000).

The only element that the defendant contests is possession. With respect to all three charges on which the defendant was convicted, the state was required to

prove beyond a reasonable doubt that he possessed the crack cocaine seized by the police. See General Statutes §§ 21a-278 (b), 21a-279 (a) and 21a-278a (b). Such possession may be actual or constructive. *State* v. *Williams*, 110 Conn. App. 778, 785, 956 A.2d 1176, cert. denied, 289 Conn. 957, 961 A.2d 424 (2008). Both actual and constructive possession require a person to exercise dominion and control over the controlled substance and to have knowledge of its presence and character. *State* v. *Hernandez*, 254 Conn. 659, 669, 759 A.2d 79 (2000). Actual possession requires the defendant to have had " 'direct physical contact' " with the narcotics. *State* v. *Williams*, supra, 787. Typically, the state will proceed under a theory of constructive possession when the narcotics are not found on the defendant's person at the time of arrest, but the accused still exercises dominion and control. See, e.g., *State* v. *Fasano*, 88 Conn. App. 17, 25, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006). The state may in some circumstances proceed on a theory of actual possession, however, even if the defendant did not physically possess narcotics at the exact time of arrest. *State* v. *Ellis T.*, 92 Conn. App. 247, 884 A.2d 437 (2005); *State* v. *Clark*, 56 Conn. App. 108, 741 A.2d 331 (1999). This court, in *Ellis T.*, held that the defendant was in actual possession of narcotics when he dropped them momentarily before being arrested. *State* v. *Ellis T.*, supra, 252. Although the defendant in that case did not physically possess the narcotics at the time he was arrested, this court concluded that the facts supporting physical possession of the narcotics moments before the arrest were sufficient to support a theory of actual possession. Id., 251 n.3.

Although the defendant here may not have physically possessed the drugs at the moment he was arrested,

Plourde observed the defendant in actual physical possession of the drugs moments before the arrest. The defendant was the only person observed by Plourde to have handled the drugs. The jury reasonably could have inferred that the defendant, the only person observed in physical possession of the drugs, dropped the drugs at his feet moments before he was arrested and had actual possession of the drugs moments before his arrest. Just as the defendant in *Ellis T.* ceased having physical possession of the drugs moments before being arrested; id., 252; the defendant here was handling drugs moments before his arrest, and the drugs were found by Borysevicz at the defendant's feet. The defendant's actions established the necessary dominion and control over the narcotics to constitute sufficient evidence of possession. Thus, the evidence introduced at trial was sufficient for the jury to find beyond a reasonable doubt that the defendant was in possession of the cocaine found at his feet.[2]

II

The defendant next claims that the court failed to instruct the jury properly on the element of possession. He claims that the court (1) improperly instructed the jury on joint possession because the state's theory of the case did not support such an instruction, (2) misled the jury by failing to answer its question adequately about joint possession, (3) confused the jury by instructing it on actual possession when the only theory supported by the evidence was constructive possession and (4) improperly gave misleading instructions on constructive and joint possession. We disagree.

The defendant did not preserve his claims and seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40,

---

[2] Because the evidence was sufficient to support a finding of actual possession, we need not discuss claims regarding joint and constructive possession.

567 A.2d 823 (1989).[3] We do not suggest that there was error in this case, but if there was error, it was induced by the defendant. He cannot, therefore, prevail under *Golding*. See *State* v. *Mungroo*, 111 Conn. App. 676, 698, 962 A.2d 797 (2008) (" *'Golding* review is inapplicable to an unpreserved claim of induced error' "), quoting *State* v. *Fabricatore*, 281 Conn. 469, 482, 915 A.2d 872 (2007).

The following additional facts are necessary to review these claims. On March 27, 2005, the court held a charging conference on the record. The court described the instructions it planned to give the jury. The defendant asked the court to read the instruction for simple possession. The court did so, and counsel for the defendant replied, "[t]hank you." When instructing the jury on the element of possession with respect to the charge of possession of narcotics, the court read those instructions. The court instructed the jury as follows: "Any person who possesses or has under his control any quantity of any narcotic substance, to wit, cocaine, except as authorized, shall be punished. For you to find the defendant guilty of this charge, the state must prove beyond a reasonable doubt that the defendant knowingly possessed or had cocaine under his control. Possession may be actual or constructive. Possession, whether actual or constructive, may be proven by either direct or circumstantial evidence. Keep in mind that possession of the cocaine, not ownership, is all that is

---

[3] "[U]nder . . . *Golding*, a defendant may prevail on an unpreserved constitutional claim of instructional error only if, considering the substance of the charge rather than the form of what was said, [i]t is reasonably possible that the jury was misled. . . . In determining whether the jury was misled, [i]t is well established that [a] charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of [the] statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Citation omitted; internal quotation marks omitted.) *State* v. *Spikes*, 111 Conn. App. 543, 558–59, 961 A.2d 426 (2008), cert. denied, 291 Conn. 901, 967 A.2d 114 (2009).

required. Actual possession is established when it is shown that the defendant had actual physical possession of the cocaine. Constructive possession is established when it is shown that the defendant exercised dominion and control over the cocaine and had actual knowledge of its presence. Remember, then, constructive possession requires a showing of two things: control and knowledge. Constructive possession may be exclusive or shared by others. The latter is known as 'joint possession.' Control is to be given its ordinary meaning; that is to say, the defendant is in control of the cocaine when it is shown that he exercised a direct control over it."

The court referred back to those instructions on possession when charging the jury on possession of narcotics with intent to sell and possession of narcotics within 1500 feet of a school. Once the jury left the courtroom, the court asked if there were any exceptions. The defendant had none.

After deliberations had commenced, the court received a note from the jury. The note requested "further instruction on the definition of possession. One, constructive, two, joint, three, any other." The court suggested that it reread the instruction on possession, and counsel for the defendant stated: "That's fine with me, Your Honor." The court asked if there were any objections to rereading the charge, and counsel for the defendant responded: "No, sir."

Some time later, the court received another note from the jury. The note asked: "[C]an only one of the two individuals in the gold SUV renter be considered in possession?" The court asked both the prosecutor and defendant: "[W]hat do you want me to do about it?" The prosecutor suggested that the court reread the portion of the possession charge. Following a discussion concerning joint possession, counsel for the defendant

stated: "[W]ouldn't it be safer to read the charge? To say, 'this [is] all I can do, is tell you what the law is. I can't answer the question for you.' " After rereading the charge on possession to the jurors, the court asked if either party had "any problem with what I said." Counsel for the defendant replied: "No, sir."

The court received another note from the jury, asking: "[U]nder the law, can two individuals have possession or control of the same narcotic?" The court and the state agreed that two persons could have possession of the same narcotic, but the defendant disagreed. Counsel for the defendant stated: "[T]he way I would cure this is to read the charge again. I think that would be the remedy." The court then reread the portion of the possession charge that referred to constructive possession and joint possession.

"[T]he term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, *encouraged* or *prompted* the trial court to make the erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional error and constitutional error." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Brunetti*, 279 Conn. 39, 59 n.32, 901 A.2d 1 (2006), cert. denied, 549 U.S. 1212, 127 S. Ct. 1328, 167 L. Ed. 2d 85 (2007).

In *State* v. *Cruz*, 269 Conn. 97, 848 A.2d 445 (2004), the court held that the defendant's jury instruction claim was not reviewable pursuant to *Golding* because the defendant induced the error. Id., 106. The defendant had submitted a request to charge on the issue of self-defense. Id., 101. When the court issued its jury instructions, it included the exact language that the defendant had requested regarding self-defense. Id., 102. The

defendant later appealed from his conviction and claimed that the instructions the court gave to the jury regarding self-defense were improper. Id., 102–103. The court found that regardless of the constitutional nature of the error, the claim was not reviewable because *Golding* was inapplicable to induced error. Id., 106.

The defendant's jury instruction claims challenge the court's instructions on actual possession, joint possession and constructive possession. Unlike *Cruz*, the jury instructions in the present case were not submitted by the defendant. The defendant, however, repeatedly encouraged the court to reread the same instructions that were initially proposed by the court at the charging conference. When the jury requested further instruction on the definition of possession, the court suggested that it reread the jury instructions regarding possession, and the defendant agreed. Furthermore, after the court received the note asking whether "two individuals [can] have possession or control of the same narcotic," the defendant stated: "[T]he way I would cure this is to read the charge again. I think that would be the remedy." The court complied with the defendant's request, rereading the exact same charge that the defendant had suggested.

By encouraging the court to reread the jury instructions concerning constructive and joint possession, the defendant induced the rereading of the same instructions he now claims were improper. To allow the defendant relief based on improper jury instructions that he himself requested to be reread to the jury would amount to allowing the defendant to induce potentially harmful error, and then ambush the state and the trial court with that claim on appeal. See *State* v. *Cruz*, supra, 269 Conn. 106. We conclude that the defendant not only failed to raise the present claim at trial but also that he induced the underlying alleged error. Therefore, we

find that the defendant is not entitled to review of his jury instruction claims.

The judgment is affirmed.

In this opinion the other judges concurred.