******************************************

The ''officially released'' date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the ''officially released'' date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* THEODORE JONES
## (AC 42674)

Bright, C. J., and Elgo and Lavine, Js.

*Syllabus*

Convicted, following a jury trial, of the crimes of possession of narcotics
with intent to sell, criminal possession of a pistol, and carrying a pistol
without a permit, the defendant appealed to this court. At 5 p.m. on the
date of his arrest, Shot Spotter, a system of microphones around the
city of New Haven that uses sound to triangulate the location of gunshots,
detected a gunshot in the area of 17 Vernon Street. Approximately four
minutes later, an individual called the police and reported seeing the
defendant in the area with a handgun. Shortly thereafter, the police
arrived at the scene, encountered the defendant in an area that was
approximately three houses down from the location identified by Shot
Spotter, and detained him. Although the defendant did not have any
weapons on him, the police recovered a firearm from a snowbank on
the property located directly behind where the defendant was discov-
ered. The defendant was arrested and was found to have multiple packets
of heroin in his possession. Additionally, the defendant's DNA and finger-
prints were found on the recovered handgun. After a jury found the
defendant guilty of all charges, he filed a motion for a judgment of
acquittal, which the trial court denied, and the defendant appealed to
this court. *Held*:

1. The evidence was sufficient to support the defendant's conviction of
criminal possession of a pistol, and, accordingly, the trial court properly
denied the defendant's motion for a judgment of acquittal with respect
to that charge: the state's arguments on appeal were consistent with
the theory that it pursued at trial, namely, that the defendant had actual
possession of the pistol on the date in question; moreover, the state
was not compelled to prove constructive possession of the pistol because
there was substantial circumstantial evidence from which the jury could
have concluded beyond a reasonable doubt that, on the date of his arrest,
the defendant actually possessed the handgun, fired it, and attempted
to dispose of it, as Shot Spotter established that a gun was fired near
17 Vernon Street, less than five minutes later an officer arrived at the
scene and found the defendant in an area only three houses down from
the location registered by Shot Spotter, no other individuals were in
the immediate area, the defendant exhibited evasive conduct by mis-
leading the police regarding where he had been and where he was going,
and, shortly after he was detained, the police found a handgun containing
the defendant's DNA and fingerprints in a snowbank just over a fence
from the location where he was apprehended.

2. There was sufficient evidence to support the jury's finding that the defen-
dant was guilty of carrying a pistol without a permit, and, accordingly,
the trial court properly denied the defendant's motion for a judgment
of acquittal with respect to that charge: the jury reasonably could have
found that the defendant carried a pistol on his person on the day in
question by holding it in his hand and firing it at 5 p.m. in the area of
Vernon Street and by carrying it and tossing it over a nearby fence in
an effort to dispose of it on the basis of the same evidence that was
sufficient for a jury to conclude that the defendant criminally possessed
a handgun on the date of his arrest.

3. Contrary to the defendant's claim, the trial court did not commit plain
error in charging the jury on criminal possession of a pistol by omitting
from its charge that the state was required to prove that the defendant
intended to exercise control over the handgun because the error, if any,
was not so clear and so harmful that a failure to reverse the judgment
would result in manifest injustice: the defendant's claim rested on an
incorrect premise, as the state was not required to prove constructive
possession, rather, it was sufficient to demonstrate that the defendant
actually possessed the firearm; moreover, the trial court's charge dis-
cussing constructive possession was substantially similar to those exam-
ined in *State* v. *Fasano* (88 Conn. App. 17) and *State* v. *Elijah* (42 Conn.

App. 687), which this court found had sufficiently explained the elements of the crimes charged to the jury.

4. This court declined to review the defendant's claim that the trial court erred by permitting two police officers to testify as to the ultimate issue of whether the defendant had intent to sell the narcotics found on his person because that claim was not properly preserved at trial: at trial, the defendant objected to the officers' testimony on the bases of relevance and lack of foundation, which the court overruled, but failed to object on the ground that the officers were testifying to an ultimate issue of fact, and, accordingly, the defendant could not challenge on appeal the proffered testimony as constituting improper opinion testimony on an ultimate issue; moreover, the defendant's alternative basis for consideration of his unpreserved claim, that this court consider it as a matter of plain error, was unavailing, as any error of the trial court in not ruling on an objection that was not made did not rise to the level required for plain error review, which is reserved for extraordinary situations in which the existence of the error was so obvious that it affected the fairness and integrity of and public confidence in the judicial proceedings.

Argued October 7, 2021—officially released January 25, 2022

*Procedural History*

Substitute information charging the defendant with the crimes of possession of narcotics with intent to sell, criminal possession of a pistol, and carrying a pistol without a permit, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, and tried to the jury before *Alander, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed*.

*Julia K. Conlin*, assigned counsel, with whom was *Emily Graner Sexton*, assigned counsel, for the appellant (defendant).

*Brett R. Aiello*, deputy assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Devant Joiner*, senior assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Theodore Jones, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell in violation of General Statutes § 21a-278 (b), criminal possession of a pistol in violation of General Statutes § 53a-217c (a) (1), and carrying a pistol without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that (1) there was insufficient evidence to support his conviction of criminal possession of a pistol (handgun or firearm), (2) there was insufficient evidence to support his conviction of carrying a pistol without a permit, (3) the court committed plain error with respect to its jury instructions concerning criminal possession of a pistol, and (4) the court erred by allowing impermissible opinion testimony regarding his intent to sell narcotics. We affirm the judgment of the trial court.

On the basis of the evidence presented at trial, the jury reasonably could have found the following facts. On December 28, 2016, at 5 p.m., New Haven's "Shot Spotter" system was activated because a gunshot was detected in the area of 17 Vernon Street in New Haven. Shot Spotter is a system of microphones around a city that uses sound to triangulate the location of gunshots and relays the information back to patrol officers. Approximately four minutes after the Shot Spotter was activated, Officer James Marcum received a dispatch call that a woman had reported that there was a man with a handgun near the intersection of Davenport Avenue and Vernon Street, that the male was wearing a black hat and black jacket, and that his name was Theodore Jones.[1]

Within thirty seconds of receiving the dispatch call, Marcum arrived at the Vernon Street location in his police cruiser and immediately saw a black male wearing a black hat and a black jacket in the driveway of a parking lot. The individual saw Marcum and proceeded to walk toward the rear of the driveway. Marcum then exited his police cruiser and yelled to the individual to show him his hands and asked the individual for his name. The individual complied and informed Marcum that his name was Theodore Jones. Marcum subsequently handcuffed the defendant and patted him down. No firearm was found on him.

When asked where he was going, the defendant indicated that he was heading to his girlfriend's house north on Vernon Street, which Marcum testified was inconsistent with him walking toward the rear of the parking lot at 9 Vernon Street. The rear portion of the parking lot at 9 Vernon Street abuts the Howard Avenue Parking Garage, which is owned by Yale University. The 9 Vernon Street property and the Howard Avenue Parking Garage property are separated by a tall chain link fence.

Officer Brendan Canning, Jr., also received the weapons complaint and soon learned that Marcum had detained the defendant. Canning arrived at the scene, conducted an investigation of the area, and spoke with the defendant. According to Canning, the defendant told him that he had been coming from the area of 27 Bond Street, which was near Water Street, but the officer testified that Bond Street was about six blocks away and that Water Street was about two miles from Vernon Street.

Officer Otilio Green, a Yale University police officer, also was working on the night in question and heard the weapons complaint and Shot Spotter activation through the New Haven Police Department scanner. When he learned that an individual was detained in a parking lot on Vernon Street and that no firearm was found, Green proceeded to the Howard Avenue Parking Garage property, which is located directly behind the property where the defendant was discovered, to see if he could locate a firearm. During the search of the fence line separating the two properties, which was captured on Green's body camera, he discovered a handgun sticking out of a snowbank. The handgun was a .40 caliber Ruger pistol with a barrel length between three and four inches long. In addition to recovering the firearm, the police located a bullet fragment in the vicinity of 17 Vernon Street.

The defendant was arrested and brought to the New Haven Police Department detention facility. Officer Andre Lyew searched the defendant and found a plastic bag tied to the defendant's genitals that contained 139 individual packets of heroin and 2 additional bags of it, weighing a total of 111 grams. The defendant also was found with approximately $199 in small bills and white plastic spoons.

Angela Przech, a forensic science examiner, later compared a sample of the defendant's DNA to two DNA swabs from the handgun, one of which included a sample from the trigger. With respect to the trigger DNA sample, Przech determined through testing that there was a DNA mixture of four contributors, with at least two contributors being male, and that it was at least 100 billion times more likely for this profile to occur if it originated from the defendant and the three unknown individuals than if it had originated from four unknown individuals. In regard to the second swab of the handgun, Przech concluded that there was a mixture of three contributors, with at least two being male, and that it was 100 billion times more likely for this profile to occur if it originated from the defendant and two unknown individuals than if it had originated from three unknown individuals.

Finally, George Shelton, a latent print examiner, examined fingerprints lifted from the handgun's maga-

zine. On the basis of his examination, Shelton opined that the latent print lifted from the magazine and the known print from the defendant matched.

The defendant was charged with possession of narcotics with intent to sell in violation of § 21a-278 (b), criminal possession of a pistol in violation of § 53a-217c (a) (1), and carrying a pistol without a permit in violation of § 29-35. Following a trial, the jury found the defendant guilty of all charges. Prior to sentencing, the court considered and denied the defendant's written motion for judgment of acquittal on each of the charges. The court thereafter sentenced the defendant to six years of imprisonment, five years being a mandatory minimum, on the conviction of possession of narcotics with intent to sell; three years of imprisonment, two years being a mandatory minimum, on the conviction of criminal possession of a pistol; and a mandatory minimum sentence of one year of imprisonment on the conviction of carrying a pistol without a permit to be served concurrently with the other sentences, for a total effective sentence of nine years. The defendant appealed.

I

The defendant first claims that there was insufficient evidence to convict him of criminal possession of a pistol. More specifically, the defendant argues that the state was required, and failed, to establish that he constructively possessed the firearm at issue. For the reasons set forth herein, we disagree with the defendant's argument.

The standard of review for this type of claim is well known. "A defendant who asserts an insufficiency of the evidence claim bears an arduous burden." *State* v. *Hopkins*, 62 Conn. App. 665, 669–70, 772 A.2d 657 (2001). In examining a sufficiency of the evidence claim, we apply a two part test. "First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Grasso*, 189 Conn. App. 186, 200–201, 207 A.3d 33, cert. denied, 331 Conn. 928, 207 A.3d 519 (2019).

As our Supreme Court has often noted, "proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal." (Internal quotation marks omitted.) *State* v.

*Robert S.*, 179 Conn. App. 831, 835, 181 A.3d 568, cert. denied, 328 Conn. 933, 183 A.3d 1174 (2018), quoting *State* v. *Fagan*, 280 Conn. 69, 80, 905 A.2d 1101 (2006), cert. denied, 549 U.S. 1269, 127 S. Ct. 1491, 167 L. Ed. 2d 236 (2007). Furthermore, "[i]n [our] process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact . . . but the cumulative impact of a multitude of facts [that] establishes guilt in a case involving substantial circumstantial evidence." (Internal quotation marks omitted.) *State* v. *Seeley*, 326 Conn. 65, 73, 161 A.3d 1278 (2017).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Internal quotation marks omitted.) *State* v. *Bradley*, 60 Conn. App. 534, 540, 760 A.2d 520, cert. denied, 255 Conn. 921, 763 A.2d 1042 (2000). "The trier [of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Fagan*, supra, 280 Conn. 80.

In the present case, the defendant was charged, in part, with violation of § 53a-217c, which provides in relevant part: "(a) A person is guilty of criminal possession of a pistol or revolver when such person possesses a pistol or revolver . . . and (1) has been convicted of a felony . . . ."[2] General Statutes § 53a-3 (2) defines " 'possess' " as "to have physical possession or otherwise to exercise dominion or control over tangible property . . . ."

Possession of a firearm may be proved through either actual or constructive possession. See *State* v. *Rhodes*, 335 Conn. 226, 233, 249 A.3d 683 (2020). Both actual possession and constructive possession may be established by direct or circumstantial evidence. See, e.g., *State* v. *Coleman*, 114 Conn. App. 722, 730, 971 A.2d 46, cert. denied, 293 Conn. 907, 978 A.2d 1112 (2009). Indeed, "there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned . . . ." (Citations omitted.) *State* v. *Wilson*, 178 Conn. 427, 434, 423 A.2d 72 (1979). Actual possession, on the one hand, "requires the defendant to have had direct physical contact with the [contraband]." (Internal quotation marks omitted.) *State* v. *Johnson*, 137 Conn. App. 733, 740, 49 A.3d 1046 (2012), rev'd in part on other grounds, 316 Conn. 34, 111 A.3d 447 (2015), and aff'd, 316 Conn. 45, 111 A.3d 436 (2015). Alternatively, "constructive possession is possession without direct physical contact. . . . It can mean an

appreciable ability to guide the destiny of the [contraband] . . . and contemplates a continuing relationship between the controlling entity and the object being controlled." (Citations omitted; internal quotation marks omitted.) *State* v. *Rhodes*, supra, 233–34. "To establish constructive possession, the control must be exercised intentionally and with knowledge of the character of the controlled object." (Internal quotation marks omitted.) *State* v. *Dawson*, 340 Conn. 136, 148, 263 A.3d 779 (2021). "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ." General Statutes § 53a-3 (11). "A person acts 'knowingly' with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists . . . ." General Statutes § 53a-3 (12).

Before we turn to the merits of the defendant's claim, we must first clarify a fundamental issue: upon what theory did the state proceed in proving the element of possession? The defendant argues that because he did not have actual, physical possession of the firearm at the time of arrest, the state's theory at trial necessarily must have been one of constructive possession. Citing to *State* v. *Robert H.*, 273 Conn. 56, 82–83, 866 A.2d 1255 (2005), the defendant argues that the state should not be permitted to press an actual possession argument on appeal because it did not pursue that theory at trial. When questioned at oral argument before this court on whether the state proceeded solely on a theory of constructive possession at trial, however, the defendant's counsel conceded that "there really was no discussion of one versus the other . . . ." Defense counsel argued that the trial court instructed on constructive possession but acknowledged, after questioning, that the court explained to the jury the difference between actual physical possession and constructive possession. On the basis of our review of the record, we conclude that the state's arguments on appeal are consistent with the theory pursued at trial—that the defendant possessed the Ruger firearm on the date in question by firing it and tossing it over a nearby fence in an attempt to dispose of it.[3]

Nevertheless, the defendant argues that, because he was not observed or found with the firearm at the time of arrest, the state was required (and failed) to prove that the defendant constructively possessed the firearm. The state disagrees that it was compelled to prove constructive possession and claims that the jury, on the basis of circumstantial evidence, could conclude beyond a reasonable doubt that the defendant actually possessed the handgun. We agree with the state.

In support of his contention that the state was

required to prove constructive possession, the defendant relies on our Supreme Court's decision in *State* v. *Winfrey*, 302 Conn. 195, 24 A.3d 1218 (2011). In *Winfrey*, the court explained that, "[b]ecause there was no direct evidence that the drugs found in the center console belonged to the defendant, the state argued the case under a theory of nonexclusive possession." Id., 210. In setting forth the standard of proving illegal possession, the court stated, inter alia, that, "[w]here . . . the [controlled substances were] not found on the defendant's person, the state *must* proceed on the theory of constructive possession, that is, possession without direct physical contact." (Emphasis added; internal quotation marks omitted.) Id. Citing to this proposition, the defendant argues in this appeal that the state was required to proceed on a theory of constructive possession.

The defendant is correct that *Winfrey* (and other similar cases) states that "[w]here . . . the [contraband was] not found on the defendant's person, the state *must* proceed on the theory of constructive possession, that is, possession without direct physical contact." (Emphasis added; internal quotation marks omitted.) Id. We disagree with the defendant, however, that this pronouncement requires the state prove constructive possession in each and every case in which a defendant is not seen or found by the police at the time of arrest with the contraband on his person. Rather, we read this language to mean that when there is insufficient evidence—direct *or* circumstantial—to establish that the defendant actually possessed (i.e., had direct physical contact with) the contraband, the state *necessarily* is required to proceed on a theory of constructive possession in order to satisfy its burden of proof.

There is little question that the state will, in many, perhaps most, cases, pursue a constructive possession theory when the defendant was not found or seen with the contraband at the time of arrest or when there is no evidence that the defendant actually possessed the contraband. See, e.g., *State* v. *Bowens*, 118 Conn. App. 112, 121, 982 A.2d 1089 (2009) ("[t]ypically, the state will proceed under a theory of constructive possession when the [contraband is] not found on the defendant's person at the time of arrest, but the accused still exercises dominion [or] control" (internal quotation marks omitted)), cert. denied, 295 Conn. 902, 988 A.2d 878 (2010). There are times, however, when there is sufficient evidence—direct or circumstantial—to establish that the defendant *actually* possessed the contraband on the day and at the time in question, despite not being seen or found physically possessing the contraband on his person at the exact time of arrest. See, e.g., *State* v. *Coleman*, supra, 114 Conn. App. 728 ("[t]he state may in some circumstances proceed on a theory of actual possession, however, even if the defendant did not physically possess narcotics at the exact time of arrest");

see also *State* v. *Ellis T.*, 92 Conn. App. 247, 251 n.3, 884 A.2d 437 (2005) (although defendant did not physically possess narcotics at time of arrest, facts were sufficient to support actual possession theory); *State* v. *Thomas*, 56 Conn. App. 573, 577, 745 A.2d 199 ("The state presented a strong circumstantial case. While it is true that the state presented no witness who saw the defendant in possession of the pistol, such lack of direct evidence is not fatal to the state's burden of proof."), cert. denied, 252 Conn. 953, 749 A.2d 1204 (2000).

Our case law has explained that constructive possession is "possession without direct physical contact." (Internal quotation marks omitted.) *State* v. *Johnson*, 316 Conn. 45, 58, 111 A.3d 436 (2015). It can mean "an appreciable ability to guide the destiny of the [contraband]" and "contemplates a continuing relationship between the controlling entity and the object being controlled." (Internal quotation marks omitted.) *State* v. *Rhodes*, supra, 335 Conn. 233–34. There will be cases like this one, however, in which there is substantial circumstantial evidence to show that the defendant actually possessed the contraband and attempted to dispose of it. See, e.g., *State* v. *Thomas*, supra, 56 Conn. App. 575–77 (gun found in alleyway shortly after defendant's arrest). It would be peculiar to require the state to prove constructive possession—a legal fiction whereby a person is deemed to possess contraband even when he does not actually have immediate, physical control of the contraband—when the facts indicate that the defendant had physical, actual contact with and control of the firearm on the day and at the time in question and then purposefully relinquished control over it so as not to be caught with it. See *State* v. *Rhodes*, supra, 268 (*Ecker*, *J.*, concurring) ("[c]onstructive possession is a 'legal fiction' "); see also *State* v. *Buhl*, 321 Conn. 688, 713, 138 A.3d 868 (2016) ("it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct" (internal quotation marks omitted)).

Furthermore, in the present case, the state proceeded on a theory that the defendant possessed the Ruger firearm on the date in question by firing it and tossing it over a nearby fence in an attempt to dispose of it. After there is an act of disposal, like the one here, there may not always be a "continuing relationship between the controlling entity and the object being controlled." (Internal quotation marks omitted.) *State* v. *Rhodes*, supra, 335 Conn. 234. Put differently, after an attempt to dispose of contraband, a defendant may no longer intend to exercise dominion or control over it. See *State* v. *Hill*, 201 Conn. 505, 516, 523 A.2d 1252 (1986) ("this control must be exercised intentionally and with knowledge of the character of the controlled object"). It would thus be illogical in those circumstances to require the state to prove constructive possession when the evi-

dence is sufficient to support a conviction based on actual possession.

We recognize that the case law in this area has not been crystal clear. Our review of it, however, leads us to conclude that, although certain cases will require the state to pursue a constructive possession theory in order for it to sustain its burden of proof, there are occasions when the evidence better supports the theory of actual possession. We accordingly agree with the state that it was not required in this case to prove constructive possession as opposed to actual possession.

We turn now to the merits of the claim to determine whether there was sufficient evidence, including circumstantial evidence, to establish beyond a reasonable doubt that the defendant *actually* possessed the firearm on the day and at the time in question. The state's information charged the defendant, in part, with criminal possession of a pistol "in the [c]ity of New Haven on or about December 28, 2016 in the area of 17 Vernon Street . . . ." We thus review whether the evidence supports a finding beyond a reasonable doubt that on or about the day of his arrest, the defendant possessed a pistol in the city of New Haven in the area of 17 Vernon Street. We conclude that it does.

When, as here, the evidence is largely circumstantial, the relevant inquiry asks whether the cumulative force of the evidence, along with plausible inferences favorable to sustaining the verdict, warrants a reasonable jury in concluding that the state has proved the elements of the offense beyond a reasonable doubt. See, e.g., *State* v. *Shawn G.*, 208 Conn. App. 154, 158, 262 A.3d 835, cert. denied, 340 Conn. 907, 263 A.3d 822 (2021). Viewed through this prism, we conclude that a reasonable jury could find—as this jury did—that the state proved beyond a reasonable doubt that the defendant possessed the firearm on the date and at the time in question.

In considering these facts in the light most favorable to upholding the verdict, the totality of the evidence supports an inference that the defendant *actually* possessed the handgun on or about December 28, 2016, in the area of 17 Vernon Street. The jury heard testimony that the Shot Spotter activated at 5 p.m. on December 28, 2016, which established that a gun was fired near 17 Vernon Street in New Haven. Marcum, who received a dispatch call at 5:04 p.m., arrived on scene only thirty seconds later to find the defendant in the driveway of 9 Vernon Street, walking toward the rear of the property to the fence line that separated that property and the Howard Avenue Parking Garage property. 17 Vernon Street, where the Shot Spotter registered, was merely three houses down from this location. No other individuals were in the immediate area. Although the defendant complied with Marcum's directives, he exhibited

evasive conduct by offering an implausible explanation about where he had been coming from and where he was going. Soon thereafter, Green found a .40 caliber Ruger handgun, which contained the defendant's DNA and fingerprints, in a snowbank just over the fence from where the defendant was stopped and near the location where the Shot Spotter had activated. After being arrested and brought to the detention center, the defendant later was found with 139 individual packets of heroin and 2 additional bags of it on him.[4]

On the basis of our review of the record, we conclude that there was sufficient circumstantial evidence by which the jury reasonably could conclude that the defendant actually possessed the .40 caliber Ruger firearm on the day in question, fired it, and tossed it over a nearby fence in an effort to dispose of it just before Marcum arrived at the scene.[5] Accordingly, the evidence was sufficient to support the defendant's conviction of criminal possession of a pistol, and the court, therefore, properly denied the defendant's motion for a judgment of acquittal.[6]

II

The defendant next claims that this court should vacate his conviction of carrying a pistol without a permit because the evidence was insufficient to support his conviction for that offense. We disagree.

We again review the principles that guide us when we consider claims of insufficient evidence. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"We note that the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw

whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical. . . .

"Finally, [a]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [finder of fact], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the [finder of fact's] verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Campbell*, 328 Conn. 444, 503–505, 180 A.3d 882 (2018).

We turn now to the essential elements of the offense. Section 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon his or her person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same issued as provided in section 29-28. . . ." "[T]o obtain a conviction for carrying a pistol without a permit, the state was required to prove beyond a reasonable doubt that the defendant (1) carried a pistol, (2) for which he lacked a permit, (3) while outside his dwelling house or place of business."[7] (Internal quotation marks omitted.) *State* v. *Covington*, 184 Conn. App. 332, 339, 194 A.3d 1224 (2018), aff'd, 335 Conn. 212, 229 A.3d 1036 (2020).

This court has explained that carrying a pistol and possession of a pistol are different concepts. See id. Although "a person can possess an item without carrying it on his person, § 29-35 is designed to prohibit the carrying of a pistol without a permit and not the [mere] possession of one." (Internal quotation marks omitted.) *State* v. *Crespo*, 145 Conn. App. 547, 573, 76 A.3d 664 (2013), aff'd, 317 Conn. 1, 115 A.3d 447 (2015). Thus, "constructive possession of a pistol or revolver will not suffice to support a conviction under § 29-35." Id.; see also *State* v. *L'Minggio*, 71 Conn. App. 656, 672, 803 A.2d 408, cert. denied, 262 Conn. 902, 810 A.2d 270 (2002). Rather, "[t]o establish that a defendant carried a pistol or revolver, the state must prove beyond a reasonable doubt that he bore a pistol or revolver upon his person . . . while exercising control or dominion of it." (Internal quotation marks omitted.) *State* v. *Bradbury*, 196 Conn. App. 510, 517, 230 A.3d 877, cert. denied, 335 Conn. 925, 234 A.3d 980 (2020). "Because there is no temporal requirement in § 29-35 . . . and no requirement that the pistol or revolver be moved from one place to another to prove that it was carried . . . a defendant can be shown to have carried a pistol or revolver upon his person, within the meaning of the

statute, by evidence proving, inter alia, that he grasped or held it in his hands, arms or clothing or otherwise bore it upon his body for any period of time while maintaining dominion or control over it." (Internal quotation marks omitted.) *State* v. *Covington*, supra, 184 Conn. App. 339–40.

The state's information charged the defendant, in part, with carrying a pistol without a permit "in the [c]ity of New Haven on or about December 28, 2016 in the area of 17 Vernon Street . . . ." We thus review whether the evidence supports a finding beyond a reasonable doubt that on or about the day of his arrest, the defendant bore a pistol on his person in the city of New Haven in the area of 17 Vernon Street.

For largely the same reasons set forth in part I of this opinion, we conclude that the jury reasonably could have found that the defendant *carried* the pistol in violation of § 29-35. As discussed previously, the jury heard testimony that the Shot Spotter activated at 5 p.m. on December 28, 2016, which established that a gun was fired near 17 Vernon Street in New Haven. Marcum, who received a dispatch call at 5:04 p.m., arrived on scene only thirty seconds later to find the defendant in the driveway of 9 Vernon Street walking toward the fence line at the rear of the property that separated it from the Howard Avenue Parking Garage property. No other individuals were in the immediate area. Although the defendant was compliant with Marcum's directives, he exhibited evasive conduct by misleading Marcum and another officer about where he had been coming from and where he was going. Soon thereafter, Green found a .40 caliber Ruger handgun, which contained the defendant's DNA and fingerprints, in a snowbank just over the fence from where the defendant was stopped and near the location where the Shot Spotter had activated.

On the basis of the previously described evidence and the inferences to be drawn therefrom, the jury reasonably could have found that the defendant carried a pistol on his person on the day in question by holding it in his hand and firing it at 5 p.m. in the area of Vernon Street, and further carrying it and tossing it over a nearby fence in an effort to dispose of it. See *State* v. *Covington*, supra, 184 Conn. App. 339–40 ("a defendant can be shown to have carried a pistol or revolver upon his person . . . by evidence proving, inter alia, that he grasped or held it in his hands, arms or clothing or otherwise bore it upon his body for any period of time while maintaining dominion or control over it" (internal quotation marks omitted)). We accordingly conclude that there was sufficient evidence to support the jury's finding that the defendant was guilty of carrying a pistol without a permit and that the court properly denied the defendant's motion for judgment of acquittal with respect to that charge.

## III

The defendant next claims that that the court committed plain error in charging the jury on criminal possession of a pistol.[8] We disagree.

We begin our analysis of the defendant's claim by setting forth the legal principles that govern our review of the claim. It is well known that "the plain error doctrine, codified at Practice Book § 60-5, is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved [and nonconstitutional in nature], are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly. . . . Implicit in this very demanding standard is the notion . . . that invocation of the plain error doctrine is reserved for occasions requiring the reversal of the judgment under review. . . .

"An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record." (Footnote omitted; internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 595–96, 134 A.3d 560 (2016).

"Although a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice." (Internal quotation marks omitted.) *State* v. *Sanchez*, 308 Conn. 64, 77, 60 A.3d 271 (2013). Accordingly, a defendant "cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Internal quotation marks

omitted.) *State* v. *Fagan*, supra, 280 Conn. 87.

The defendant argues that the court committed plain error when it omitted from its charge that the state was required to prove that the defendant *intended* to exercise control over the handgun to establish constructive possession. After reviewing the defendant's claim against the plain error standard, we discern no error, plain or otherwise.

First, the defendant's plain error claim fails for the fundamental reason that it rests on an incorrect premise. As we discussed in part I of this opinion, the state was not required to prove constructive possession in this instance. It was sufficient for the state to demonstrate that the defendant *actually* possessed the firearm in question. To that end, the court instructed the jury in relevant part: "Possession means either actual possession or constructive possession. Actual possession means actual physical possession, such as having the object on one's person." See footnote 3 of this opinion.

Second, on our examination of the court's charge discussing constructive possession; see footnote 3 of this opinion; we find it substantially similar to those examined in *State* v. *Fasano*, 88 Conn. App. 17, 22–24 n.7, 868 A.2d 79, cert. denied, 274 Conn. 904, 876 A.2d 15 (2005), cert. denied, 546 U.S. 1101, 126 S. Ct. 1037, 163 L. Ed. 2d 873 (2006), and *State* v. *Elijah*, 42 Conn. App. 687, 691–92, 682 A.2d 506, cert. denied, 239 Conn. 936, 684 A.2d 709 (1996). In both cases, this court concluded that those instructions sufficiently explained to the jury the elements of the crimes charged. *State* v. *Fasano*, supra, 33; *State* v. *Elijah*, supra, 694; see also *State* v. *Jarrett*, 82 Conn. App. 489, 496, 845 A.2d 476 ("hold[ing] that a separate instruction on the requirement of intentional control need not be provided in every instance"), cert. denied, 269 Conn. 911, 852 A.2d 741 (2004). Accordingly, we cannot conclude that the court plainly erred in the present case because the error, if any, was not so clear and so harmful that a failure to reverse the judgment would result in manifest injustice.

IV

The defendant's final claim is that the court erred by permitting two police officers to testify to the ultimate issue of whether the defendant had intent to sell the narcotics found on him. This claim was not properly preserved at trial and we therefore decline to review it on appeal.

"[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. This court is not bound to consider claims of law not made at the trial. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . In objecting to evidence, counsel must properly articulate the basis of the objection so as to apprise the trial court of the precise nature of the objection

and its real purpose, in order to form an adequate basis for a reviewable ruling. . . . Once counsel states the authority and ground of [the] objection, any appeal will be limited to the ground asserted." (Internal quotation marks omitted.) *State* v. *Jorge P.*, 308 Conn. 740, 753, 66 A.3d 869 (2013).

The defendant takes exception to certain testimony of Marcum and Canning about the heroin found on the defendant's person. He argues that the court erred by permitting them to testify as to the ultimate issue of whether the defendant had the intent to sell the narcotics found on him. The state argues that this claim is unpreserved because the defendant failed to object to the evidence on this basis before the trial court. We agree with the state.

We first begin with testimony of Marcum. During direct examination, the prosecutor asked him: "[B]ased on your training and experience, did you come to any conclusions based on the way these items were packaged?" Marcum responded, "[y]es," and defense counsel objected. Following this objection, the court excused the jury and the following colloquy occurred:

"[Defense Counsel]: There's been no foundation laid, he's going make a conclusion that this is sale of drugs.

"The Court: Well, let me—let me hear an offer of proof. What is the answer going to be?

"[The Prosecutor]: That based on the packaging and the way it was secreted, that it was—his indication that it was packaged in a way that was for sale and not personal use.

"The Court: Okay; and your objection is foundation?

"[Defense Counsel]: Yeah, there's no foundation that he can make that conclusion.

"The Court: Okay. You want to—do you want to make—lay that foundation?

"[The Prosecutor]: Well, Your Honor, it's my understanding that any officer can testify to what his training and experience tells him—

"The Court: Yeah, but—correct, but you haven't laid any foundation that he has either training or experience as it relates to how drugs are packaged for sale.

"[The Prosecutor]: Well—

"The Court: Okay, so you would need to lay that foundation.

"[The Prosecutor]: We can lay that foundation with this—

"The Court: Okay. I mean, for all I know, he was in the evidence for the last seven years; what do I know?

"[The Prosecutor]: Okay.

"The Court: So if we could have—or he did crime scenes, I don't know. There's lots of things he could've done. So if we could have the jury back."

On the jury's return, the court indicated that the defendant's objection was sustained. The prosecutor then elicited from Marcum details of his training and experience and, in response to further questioning, he testified that the manner in which the drugs were hidden on the defendant's body, the quantity of wax paper folds found, and the presence of $199 in small bills, were all indicative of narcotics being sold.

We turn next to the testimony of Canning, who testified that he was the arresting officer in this case and that Lyew was the officer who actually physically located the narcotics on the defendant. The following colloquy then occurred:

"[The Prosecutor]: Based on your experience, Officer Canning, what would you say the way the drugs were packaged, what their intent was for this?

"[Defense Counsel]: Your Honor, I'm going to have to—there's been no foundation. I don't even know if he even saw the drugs. He just said he got information that they—

"The Court: Yeah, fair enough."

The prosecutor then elicited from Canning testimony that, although he never reviewed the narcotics that were found on the defendant, he was informed that the defendant was found with 139 individual packets of heroin, which were located in his crotch area. The prosecutor later asked Canning what he charged the defendant with. Defense counsel objected on the basis of relevance, but the court overruled that objection. The prosecutor then asked Canning why he charged the defendant with possession of narcotics with intent to sell. Defense counsel objected again, this time on the basis of lack of foundation. The court overruled that objection, concluding that the state laid the requisite foundation with respect to Canning's training and experience. Canning then testified that he charged the defendant as he did because street level narcotics sales are typically handled in the same manner.

On the basis of our review of the record, we conclude that the defendant failed to object on the ground that the two police officers were testifying to an ultimate issue of fact, the applicable objection. We agree with the state that the defendant cannot now challenge the proffered testimony as constituting improper opinion testimony on an ultimate issue where the only objections raised before the trial court were on the bases of relevance and foundation. See *State* v. *Stenner*, 281 Conn. 742, 755, 917 A.2d 28 ("[t]o permit a party to raise a different ground on appeal than [that] raised during trial would amount to trial by ambuscade, unfair both

to the trial court and to the opposing party" (internal quotation marks omitted)), cert. denied, 552 U.S. 883, 128 S. Ct. 290, 169 L. Ed. 2d 139 (2007).

As an alternative basis for our consideration of this unpreserved claim, the defendant asks that we consider it as a matter of plain error pursuant to Practice Book § 60-5. Although we fail to see how the court could have erred by not ruling on an objection never made, suffice it to say that such an error, if any, does not rise to the level required for plain error review. See, e.g., *State* v. *Smith*, 209 Conn. 423, 425, 427, 551 A.2d 742 (1988) (finding no plain error where police officer gave opinion testimony concerning defendant's intent to sell narcotics). "Such review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *State* v. *Hinckley*, 198 Conn. 77, 87–88, 502 A.2d 388 (1985). This clearly is not such a case.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The dispatch was admitted only for its effect on the listener and not for the truth of the matter asserted.

[2] The parties stipulated that the defendant had a prior felony conviction.

[3] The court's instruction provided in relevant part: "In count two of the information, the state accuses the defendant of the crime of criminal possession of a pistol, in violation of . . . § 53a-217c (a) (1) and alleges that on or about December 28, 2016, in the city of New Haven, in the area of 17 Vernon Street, the defendant possessed a pistol and has been convicted of a felony. . . .

"Section 53a-217c (a) (1) states in relevant part that a person is guilty of criminal possession of a pistol when such person possesses a pistol or revolver and has been convicted of a felony.

"To convict the defendant of criminal possession of a pistol, the state must prove two essential elements beyond a reasonable doubt: (1) the defendant possessed a pistol; and (2) the defendant had been convicted of a felony.

"The first essential element is that the defendant possessed a pistol. A pistol is defined by statute to mean any firearm having a barrel less than twelve inches in length. Possession means either actual possession or constructive possession. Actual possession means actual physical possession, such as having the object on one's person.

"Constructive possession means having control over the object. As long as the object is in a place where it is subject to the defendant's dominion and control, where the defendant can, if he wishes, go and get it is, it is in his possession. Mere presence of the defendant in the vicinity is not sufficient by itself to establish constructive possession. However, presence is a factor you may consider along with all the other evidence in determining possession. Where the defendant was not the only person who had access to the area where the handgun was found, you may not infer that he knew of its presence and that he had control of it, unless he made some incriminating statement or unless there are some other circumstances which tend to support such an inference.

"Possession also requires knowledge. The defendant must have knowingly possessed the pistol. I defined the terms knowledge and knowingly for you in my instruction to you in count one. You should apply those same instructions here.

"The second essential element is that at the time the defendant possessed the pistol, if you find that he did so, he was prohibited from possessing a pistol because he had been convicted of a felony. Convicted means having a judgment of conviction entered by a court of competent jurisdiction. This conviction must have occurred prior to the date it is alleged the defendant possessed the pistol. A felony is a crime for which a person may be sentenced to prison for more than one year. In this case, the state and the defendant have stipulated that, prior to December 28, 2016, the defendant had been convicted of a felony. A stipulation is an agreement between the parties

concerning the existence of a fact. You will treat this fact as true. This stipulation, however, has been admitted for a limited purpose, that purpose being to establish the second essential element of this offense. The stipulation may not be used for any other purpose. The fact that the defendant was previously convicted of a felony cannot—cannot be used by—cannot be used to show or prove any element of any other crime that the defendant is presently charged with. It also may not be used as evidence to show the defendant had a bad character or criminal tendencies.

"The state asserts that on or about December 28, 2016, the defendant had constructive possession of a pistol in the area of 17 Vernon Street in New Haven. The state further asserts that the parties have stipulated that the defendant had been previously convicted of a felony.

"The defendant, by pleading not guilty to this charge, has placed all of the essential elements of the crime at issue, but has assumed no burden whatsoever of disproving them by any standard. The burden remains on the state to prove beyond a reasonable doubt each of the essential elements of the offense charged."

Although the court made one isolated statement during its instruction that the state was proceeding on a constructive possession theory, we find such statement of no moment. A simple review of the court's instruction discloses that the court accurately instructed on both actual and constructive possession, so such statement was inconsequential. Neither the charging conference nor the record suggests that the state exclusively pursued a constructive possession theory. In fact, during the charging conference, the court and the prosecutor acknowledged that the state was required to prove that he had physical possession of the firearm for purposes of the charge of carrying a pistol without a permit in violation of § 29-35. It would thus be anomalous for the state to have proceeded on a constructive possession theory for the criminal possession charge while it was required to prove that the defendant actually carried the weapon on his person for the carrying a pistol without a permit charge.

[4] Connecticut courts repeatedly have recognized that "[t]here is a well established correlation between drug dealing and firearms." *State* v. *Cooper*, 227 Conn. 417, 426 n.5, 630 A.2d 1043 (1993). Although this correlation cannot by itself establish an element of a crime, it may "support the reasonableness of the inferences drawn by the jury." *State* v. *Gonzalez*, 311 Conn. 408, 426, 87 A.3d 1101 (2014); see also *United States* v. *White*, 356 F.3d 865, 870 (8th Cir. 2004) ("[w]e allow a [fact finder] to infer a connection between drugs and firearms when a defendant distributes quantities of illegal drugs because firearms are viewed as a tool of the trade for drug dealers"). Thus, the fact that 139 individual packets of heroin and 2 additional bags of it were found on the defendant bears some relevance to the issue of whether the defendant was in possession of the firearm.

[5] We conclude that, even if the state had exclusively pursued a constructive possession theory at trial, there was still sufficient evidence to establish beyond a reasonable doubt that the defendant constructively possessed the firearm on the day in question. First, there was evidence that the defendant had a temporal and spatial connection to the handgun, having been detained by the police near the weapon with no other individuals around, only minutes after the Shot Spotter had registered a gunshot in the immediate area in which he was located. Second, the defendant's DNA and fingerprints were on the firearm, further linking him to the weapon. See *State* v. *Martin*, 285 Conn. 135, 150, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008) ("mere presence is not enough to support an inference of dominion or control, [when] there are other pieces of evidence tying the defendant to dominion [or] control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime" (internal quotation marks omitted)). Third, the defendant exhibited evasive conduct by misleading the police about where he had been coming from and where he was going when he was stopped. Fourth, on his arrival, Marcum discovered the defendant walking back toward the area where the handgun was discarded.

On the basis of the foregoing, we conclude that the defendant's location in close proximity to the handgun, with no other individuals in the immediate area, after the Shot Spotter activated only four minutes earlier, along with his DNA and fingerprints on the handgun, and his decision to remain in the vicinity of where the handgun was discarded, would allow the jury reasonably to infer that that he possessed the weapon.

[6] On August 13, 2021, our Supreme Court released its decision in *State* v. *Dawson*, supra, 340 Conn. 138. This decision came after the parties in the present case had submitted their briefs but before oral arguments. In *Dawson*, our Supreme Court reversed this court's decision affirming the defendant's conviction of criminal possession of a pistol in violation of § 53a-217c. Id., 139. Our Supreme Court concluded that the evidence was insufficient

to convict the defendant on the basis of constructive possession because, among other reasons, the gun the defendant was accused of having control over was found by the police in a public place, within reach of several individuals who were with the defendant, and, although the defendant's DNA profile was on the gun, it was mixed with the DNA of others who were not identified. Id., 156–57, 162. At oral argument before us in the present case, the defendant argued that this case is controlled by *Dawson* and that his conviction should be reversed for the same reasons that supported reversal in *Dawson*. The defendant's reliance on *Dawson* is misplaced. First, as discussed in this opinion, we view the state's theory in the present case as being based on actual possession, not exclusively on constructive possession, as was the case in *Dawson*. See id., 152. Second, the circumstantial evidence connecting the defendant to the gun in the present case is much stronger than was the circumstantial evidence in *Dawson*. See footnote 5 of this opinion.

[7] The parties stipulated that the defendant did not have a valid Connecticut pistol permit on December 28, 2016, as required by General Statutes § 29-28, which satisfied that element of carrying a pistol without a permit.

[8] The defendant recognizes that he did not distinctly raise an objection to the jury instruction before the trial court. Citing to *State* v. *McClain*, 324 Conn. 802, 815, 155 A.3d 209 (2017), which held that an implicit waiver of the constitutional right to challenge jury instructions on direct appeal in accordance with *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), does not preclude appellate relief under the plain error doctrine, the defendant seeks review solely under the plain error doctrine.

-----------------------------------